Slip Op. 12-54

## UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Nicholas Tsoucalas, Senior Judge**

| | |
|---|---|
| TIANJIN MAGNESIUM INTERNATIONAL CO., LTD. | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Consol. Court No.: 09-00012 |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant, | : |
| | : |
| and | : |
| | : |
| US MAGNESIUM, LLC, | : |
| | : |
| Defendant-Intervenor. | : |

## OPINION

**Held:** The Final Results of Redetermination Pursuant to Voluntary Remand issued by the Department of Commerce is affirmed.

Dated: April 25, 2012

Riggle & Craven, (David A. Riggle) for Tianjin Magnesium International Co., Ltd., Plaintiff.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Claudia Burke, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (Renee Gerber); Thomas M. Beline, Office of Chief Counsel for Import Administration, United States Department of Commerce, Of Counsel, for the United States, Defendant.

King & Spalding, LLP, (Stephen A. Jones and Jeffrey B. Denning) for US Magnesium, LLC, Defendant-Intervenor.

**TSOUCALAS, Senior Judge:** This matter comes before the Court upon the Final Results of Redetermination Pursuant to Voluntary

Remand: Pure Magnesium from the People's Republic of China ("Second Redetermination") issued by the Department of Commerce ("Commerce") on October 31, 2011.  Plaintiff, Tianjin Magnesium International Co., Ltd. ("Tianjin") filed Comments asserting that the Second Redetermination was without support and requesting that the Court remand this matter to Commerce for further proceedings. Defendant-Intervenor, US Magnesium, LLC ("US Magnesium") filed Comments stating that Commerce's decision was well supported, and urging the Court to affirm the Second Redetermination without modification.  For the reasons set forth below, the Court concludes that the Second Redetermination is supported by substantial evidence and otherwise in accord with the law and affirms Commerce's decision.

## BACKGROUND

This case involves an administrative review of the antidumping order on pure magnesium from the People's Republic of China for the period from May 1, 2006, through April 30, 2007.  See Pure Magnesium from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, 73 Fed. Reg. 76,336 (Dec. 16, 2008) ("2006-2007 Final Results").  At the conclusion of the administrative review, Tianjin, a seller of pure magnesium for export, was assigned a rate of 0.63%, and appeals were filed by both Tianjin and US Magnesium.  On August 9, 2010, the Court remanded the case for further proceedings after concluding that not

all of the surrogate values relied on in the <u>2006-2007 Final Results</u> were supported. <u>See</u> <u>Tianjin Magnesium Int'l Co., Ltd. v. United States</u>, 34 CIT __, 722 F. Supp. 2d 1322 (2010) ("Tianjin I"). On February 11, 2011, Commerce issued its Final Results of Redetermination Pursuant to Court Remand Pure Magnesium from the People's Republic of China ("First Redetermination"). While this Court's review of that First Redetermination was pending, Commerce requested that the matter again be remanded so it could determine whether to reopen the 2006-2007 administrative review based on the factors announced by the United States Court of Appeals for the Federal Circuit in <u>Home Prods. Int'l, Inc. v. United States</u>, 633 F.3d 1369 (Fed. Cir. 2011). The Court granted Commerce's request.

To best understand the issues weighed by Commerce in this most recent remand, attention must be given to events that occurred during the first remand. The Court first remanded this case, in part, based on its conclusion that the record contained inadequate support for the valuation given to waste magnesium, a manufacturing process byproduct the sale of which could offset the normal value. <u>Tianjin I</u>, 34 CIT at __, 722 F. Supp. 2d at 1336. Whether Tianjin was entitled to the offset was not in question when this matter was first remanded.

Following the Court's remand in August, 2010, Commerce concluded that there was not adequate evidence in the record to properly value the waste magnesium, and it issued to Tianjin a

supplemental questionnaire.  Second Redetermination at 4.  In its
response to that supplemental questionnaire, Tianjin continued to
claim entitlement to the waste magnesium byproduct offset, and it
provided  documentation  supporting  that  claim  such  as  sales
invoices, sales ledger entries, and other accounting records.  <u>See</u>
Response to the Supplemental By-product Questionnaire by Tianjin
Magnesium International, Co., Ltd. (Oct. 19, 2010), Public Rec. 6,
Confidential Rec. 2 ("Supplemental Response").[1]

On November 2, 2010, US Magnesium filed its Rebuttal Factual
Information  and  Petitioner's  Comments  On  TMI's  Supplemental
Byproduct  Response  (Nov.  2,  2010),  PR  10  ("Rebuttal").    US
Magnesium's Rebuttal included a copy of Commerce's verification
report from the administrative review for the 2007-2008 period of
review.  <u>See</u> Verification of the Sales and Factors Responses of
Tianjin  Magnesium  International,  Ltd.  in  the  2007-2008
Administrative  Review  of  the  Antidumping  Duty  Order  on  Pure
Magnesium  from  the  People's  Republic  of  China  (Nov.  4,  2009),
Rebuttal,  Exhibit  1  ("2007-2008  Verification  Report").    In  the
2007-2008 Verification Report, Commerce stated that it was notified
by Tianjin's suppliers that there had been no byproduct sales prior
to  April  2007.    In  other  words,  there  were  no  byproduct  sales
during  the  2006-2007  period  of  review  at  issue  in  this  case.

---

[1] Hereinafter all documents in the public record will be
designated "PR" and all documents in the confidential record
designated "CR.

Commerce stated that this disclosure was made in Tianjin's presence.  Second Redetermination at 14.

Based on this information, US Magnesium argued that Tianjin was not entitled to the byproduct offset.  In support, US Magnesium pointed out that Tianjin's Supplemental Response, in which it asserted its entitlement to a byproduct offset, was filed more than a year after the 2007-2008 Verification Report was issued, and therefore Tianjin must have been aware that there were no sales entitling it to an offset.  See Rebuttal at 9.  Commerce decided, however, that it could not consider the 2007-2008 Verification Report, because it did not exist at the time Commerce made its initial determination in the 2006-2007 Final Results.  First Redetermination at 17.  In the First Redetermination, Commerce still considered Tianjin eligible for the byproduct offset.

Review of this First Redetermination was pending when Commerce sought another remand to consider reopening the 2006-2007 administrative review pursuant to the factors in Home Products, which is the remand currently at issue.  On remand, Commerce determined that there existed clear and convincing evidence sufficient to make a prima facie case that the 2006-2007 administrative review was tainted by fraud.  Commerce specifically relied on the information set forth above that there had, in fact, been no byproduct sales during the 2006-2007 period, as well as evidence that the vouchers submitted to show such sales were

fabricated.   Second Redetermination at 9-10.   This evidence led
Commerce to conclude that Tianjin intentionally misrepresented its
entitlement to a byproduct offset, and that it did so to lower its
margin.   Id. at 10.   Commerce also stated that although it normally
considers its administrative reviews final and conclusive, this
case presented circumstances weighing in favor of reopening the
review.   Commerce noted that Tianjin's misrepresentations were
material because when relied on by Commerce, they resulted in a
lower margin for Tianjin.   Id. at 14-15.   Commerce also concluded
that Tianjin's fraud was discovered within a reasonable time, and
noted that Tianjin's entries from the 2006-2007 period of review
remained unliquidated because of an injunction.   Id. at 15-16.

Based on this evidence, Commerce determined that it was
appropriate to reopen the record of the 2006-2007 administrative
review.   Commerce prepared draft results wherein it concluded that
Tianjin was not entitled to the byproduct offset and calculated
Tianjin's margin to be 21.24%.   Id. at 18.   However, after
receiving comments from the parties, Commerce revised its
determination and concluded that Tianjin's behavior significantly
impeded the review pursuant to Section 766(a)(2)(C) of the Tariff
Act of 1930, as amended, 19 U.S.C. § 1677e(a)(2)(C) (2006).[2]
Second Redetermination at 27.   Pursuant to 19 U.S.C. § 1677e(b),

--------

[2] All further citations to the Tariff Act of 1930 are to the
relevant provisions of Title 19 of the United States Code, 2006
edition.

Commerce further concluded that Tianjin failed to cooperate to the best of its ability, and applied an adverse facts available rate of 111.73%, which rate had already been calculated for a respondent other than Tianjin in the 2006-2007 review.

## STANDARD OF REVIEW

As stated in Tianjin I, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. §1516a(a)(2)(B)(iii).   Additionally, the Court will uphold Commerce's determinations in administrative reviews unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## ANALYSIS

Whether Commerce was justified in reopening the 2006-2007 review turns on an interpretation of the Home Products decision. In that decision, the Court of Appeals dealt with the question of whether remand is required when evidence is presented  that the proceedings below were tainted by material fraud.  Stating that the Court of International Trade's discretion on whether to remand is not unlimited, the Court of Appeals held that

> where a party brings to light clear and convincing new evidence sufficient to make a prima facie case that the agency proceedings under review were tainted by material fraud, the Trade Court abuses its discretion when it declines to order a remand to require the agency to reconsider its decision in light of the new evidence.

Home Prods., 633 F.3d at 1378.  The Court of Appeals clarified that

Commerce need not reopen the administrative proceedings just because evidence of fraud existed, and stated that in making the decision to reopen or not, Commerce can consider "the interests in finality, the extent of the inaccuracies in the . . . administrative review, whether fraud existed in the . . . administrative review, the strength of the evidence of fraud, the level of materiality, and other appropriate factors." Id. at 1381.

The posture of this case is different than Home Products in that here, the evidence of Tianjin's fraud was raised before Commerce at the administrative level instead of before the court as it was in Home Products. See id. at 1375. Tianjin argues that Commerce erred in two primary ways when it made the threshold fraud finding and reopened the review: (1) Commerce did not conduct an analysis of the elements of fraud, and (2) Tianjin's conduct did not rise to the level of fraud.

Taking up Tianjin's first argument, the Court concludes that there is nothing in the Home Products decision that requires a threshold analysis and finding regarding each of the elements of fraud. First, Home Products itself does not engage in such a rigorous analysis. Furtermore, the Court of Appeals did not require remand only when evidence is presented that a participant in the administrative proceedings committed fraud, either at common law as proposed by Tianjin, or otherwise. Home Products sets forth a less rigorous standard, requiring remand when "evidence

sufficient to make a prima facie case that the agency proceedings under review were tainted by material fraud" is presented.  Id. at 1378.  The "prima facie case" prescribed by Home Products is not whether a party has committed common law fraud, but rather whether the proceedings themselves were "tainted by material fraud."[3]  This inquiry is broader, and less exacting, than a determination regarding whether the conduct of a party has met the legal elements of fraud.

Given this conclusion regarding the Home Products standard, the Court concludes that Commerce's determination that the proceedings below were "tainted by material fraud" is well supported by substantial evidence in the record.  Throughout these proceedings, Tianjin attempted to insulate itself from the lack of byproduct sales by stating that it was Tianjin's suppliers who sold byproduct and kept the requisite paperwork.  See, e.g., Pl.'s Comments on the Second Redetermination of October 31, 2011 at 6.  However, by the time Tianjin submitted its Supplemental Response in October 2010, it was undoubtedly aware that there had been no byproduct sales during the 2006-2007 administrative review period.  Only Tianjin claimed entitlement to a byproduct offset in its October 2010 Supplemental Response, and only Tianjin filed the

---

[3] "Taint" is defined as "(1) To imbue with a noxious quality or principle. (2) To contaminate or corrupt. (3) To tinge or affect slightly for the worse." Black's Law Dictionary 1466 (7th ed. 1999).

paperwork with Commerce purporting to justify that claim. Furthermore, as can be seen by the disparity in 0.63% margin imposed on Tianjin in the 2006-2007 Final Results, and the 21.24% margin Commerce was going to impose before deciding to apply adverse facts available, Tianjin's claimed offset was material in that it stood to benefit from a greatly reduced margin if Commerce applied the byproduct offset.

Finally, the Court concludes that Tianjin's conduct was egregious enough to warrant Commerce's determinations that Tianjin had impeded its investigation and failed to act to the best of its ability. See Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003) ("While the ['best of its ability'] standard does not require perfection and recognizes that mistakes sometimes occur, it does not condone inattentiveness, carelessness, or inadequate record keeping.").[4]

Based on the foregoing, and the Court's review of the Second Redetermination and all other pleadings and papers filed herein, it is hereby

**ORDERED** that the Final Results of Redetermination Pursuant to Voluntary Remand issued by the Department of Commerce is affirmed

---

[4] The Court notes that in addition to its arguments against Commerce's interpretation of Home Products, Tianjin also argues that Commerce erroneously applied zeroing in the Second Redetermination. Given Commerce's application of adverse facts available, and the Court's conclusion that this determination was supported by substantial evidence, the Court need not reach the issue of zeroing.

**Court No. 09-00012**                                                 **Page 11**

without modification, and this matter is dismissed.


                                        /s/ NICHOLAS TSOUCALAS
                                      **Nicholas Tsoucalas**
                                        **Senior Judge**


Dated: April 25, 2012
       New York, New York

Slip Op. 12-54

UNITED STATES COURT OF INTERNATIONAL TRADE

Before: Nicholas Tsoucalas, Senior Judge

| | |
|---|---|
| TIANJIN MAGNESIUM INTERNATIONAL CO., LTD. | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Consol. Court No.: 09-00012 |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant, | : |
| | : |
| and | : |
| | : |
| US MAGNESIUM, LLC, | : |
| | : |
| Defendant-Intervenor. | : |
| | : |

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein, now, in accordance with said decision, it is hereby

**ORDERED** that the Final Results of Redetermination Pursuant to Voluntary Remand issued by the Department of Commerce on October 31, 2011, is affirmed without modification; and it is further

**ORDERED** that this matter is dismissed.

                                    /s/ NICHOLAS TSOUCALAS
                                **Nicholas Tsoucalas**
                                **Senior Judge**

Dated: April 25, 2012
       New York, New York